IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENJAMIN WITTES,<br>1775 Massachusetts Avenue, NW<br>Washington, DC 20036<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY,<br>2707 Martin Luther King Jr. Ave, SE<br>Washington, DC 20528-0485,<br><br>*Defendant*. | CIVIL ACTION<br>Case No. _____ |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Benjamin Wittes, by and through his undersigned attorneys, brings this complaint against the Defendant United States Department of Homeland Security ("DHS"), seeking injunctive and other appropriate relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In support thereof, he alleges the following:

## INTRODUCTION

1.  Mr. Wittes is the Editor-in-Chief of *Lawfare*, a well-known national security publication. In that role, Mr. Wittes reports regularly about DHS and many of its operations. However, in July 2020, news reports emerged that DHS had also been collecting information *about Mr. Wittes* and using that information to compile "Open Source Intelligence Reports" based on Mr. Wittes's work. When Mr. Wittes submitted a FOIA request to DHS to obtain more information about its practices related to such reports, DHS never responded to it. Accordingly, Mr. Wittes brings this action to enforce his rights under FOIA.

2. On July 20, 2020, Mr. Wittes published information about a leaked, unclassified document regarding DHS's operations responding to the Black Lives Matter protests at that time in Portland, Oregon.[1] The document, from DHS's Office of Intelligence and Analysis ("I&A"), described I&A personnel as "collecting and reporting on various activities" by protesters in Portland. In the following days, Mr. Wittes received and published additional documents about DHS's operations in Portland, including an I&A memorandum complaining about the "ongoing leaks" of information to Mr. Wittes and other journalists.[2]

3. On July 30, 2020, *The Washington Post* published an article revealing that I&A had also compiled Open Source Intelligence Reports ("Reports") about Mr. Wittes and his reporting, as well as about a *New York Times* correspondent, Mike Baker.[3] As the *Post* article stated, such Reports are distributed to federal law enforcement agencies and others and "meant to share information about suspected terrorists and violent actors." After the Reports about Mr. Wittes and Mr. Baker became public, DHS issued a statement indicating that then-acting DHS

---

[1] Steve Vladeck & Benjamin Wittes, *DHS Authorizes Domestic Surveillance to Protect Statues and Monuments*, Lawfare (July 20, 2020, 2:33 PM), https://www.lawfareblog.com/dhs-authorizes-domestic-surveillance-protect-statues-and-monuments.

[2] Benjamin Wittes (@benjaminwittes), Twitter (July 24, 2020, 9:02 PM), https://twitter.com/benjaminwittes/status/1286828934760464386 (posting an I&A memorandum complaining about leaks to journalists); *see also* Benjamin Wittes (@benjaminwittes), Twitter (July 26, 2020, 7:06 AM), https://twitter.com/benjaminwittes/status/1287343604038598656 (posting an I&A memorandum "formally changing the blame for Portland violence from 'Violent Opportunists' (VO) to Antifa"); Benjamin Wittes (@benjaminwittes), Twitter (July 26, 2020, 7:09 AM), https://twitter.com/benjaminwittes/status/1287344231959470080 (commenting on the aforementioned I&A memorandum: "Understand this document as responsive to POTUS pressure to 'designate' Antifa as a terrorist organization").

[3] Shane Harris, *DHS Compiled 'Intelligence Reports' on Journalists Who Published Leaked Documents*, Wash. Post (July 30, 2020, 10:57 PM), https://www.washingtonpost.com/national-security/dhs-compiled-intelligence-reports-on-journalists-who-published-leaked-documents/2020/07/30/5be5ec9e-d25b-11ea-9038-af089b63ac21_story.html.

secretary Chad Wolf had "directed" I&A "to immediately discontinue collecting information involving members of the press."[4]

4. The next day, *The Washington Post* published a separate article revealing that I&A had also compiled at least one Open Source Intelligence Report about communications that protesters in Portland had exchanged on the Telegram messaging application.[5]

5. The DHS investigations of both journalists and protesters raise serious First Amendment concerns. The First Amendment protects a wide range of speech, including but not limited to public demonstrations, protests, and newsgathering about the same, so long as the speech is not both "directed to inciting or producing imminent lawless action" and "likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

6. Current and former intelligence officials reportedly condemned I&A's use of Open Source Intelligence Reports during the protests in Portland.[6] It was later reported that as a result of the revelations about I&A's use of the Reports, the director of I&A had been removed

---

[4] Press Release, Department of Homeland Security, Statement from DHS Spokesman Alexei Woltornist on DHS Intelligence & Analysis Directorate Reports (July 31, 2020), https://www.dhs.gov/news/2020/07/31/statement-dhs-spokesman-alexei-woltornist-dhs-intelligence-analysis-directorate.

[5] Shane Harris, *DHS Analyzed Protester Communications, Raising Questions About Previous Statements by Senior Department Official*, Wash. Post (July 31, 2020, 7:32 PM), https://www.washingtonpost.com/national-security/dhs-analyzed-protester-communications-raising-questions-about-previous-statements-by-senior-department-official/2020/07/31/313163c6-d359-11ea-9038-af089b63ac21_story.html.

[6] *See, e.g.*, Harris, *supra* note 3; Zolan Kanno-Youngs & Marc Tracy, *Homeland Security Shuts Down 'Intelligence' Reports on Journalists*, N.Y. Times (July 31, 2020), https://www.nytimes.com/2020/07/31/us/politics/homeland-security-portland.html.

from his job, and then-acting Secretary Wolf had ordered an investigation of I&A's practice of collecting information on journalists.[7]

7. To learn more about these activities, Mr. Wittes submitted a FOIA Request to I&A on or about November 17, 2020 (the "Request").[8] Mr. Wittes's Request seeks records about Open Source Intelligence Reports concerning First Amendment-protected activity, as well as DHS policies and guidance governing the use of such Reports. The Request also seeks expedited processing because Mr. Wittes is a journalist with an urgent need to inform the public about the federal government's alleged actions in investigating Americans because of their protected speech. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).

8. However, DHS failed to respond to, or even acknowledge, Mr. Wittes's Request within the statutory timeframe required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). Moreover, counsel for Mr. Wittes contacted DHS numerous times to discuss the Request, but received no response. Accordingly, injunctive relief is appropriate to ensure DHS's compliance with its FOIA obligations.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. § 1331.

10. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B).

---

[7] Shane Harris & Nick Miroff, *DHS Official Whose Office Compiled 'Intelligence Reports' on Journalists and Protesters Has Been Removed From His Job*, Wash. Post (Aug. 1, 2020, 6:42 PM), https://www.washingtonpost.com/national-security/dhs-official-whose-office-compiled-intelligence-reports-on-journalists-and-protesters-has-been-removed-from-his-job/2020/08/01/f01247be-d3ff-11ea-8d32-1ebf4e9d8e0d_story.html.

[8] A copy of the Request is attached hereto as Exhibit A.

## PARTIES

11. Mr. Wittes is Editor-in-Chief of *Lawfare*, a national security blog published in cooperation with the Brookings Institution, a nonprofit public policy organization based in Washington, D.C.

12. DHS is an "agency" within the meaning of 5 U.S.C. § 552(f). I&A is a component of DHS. Upon information and belief, DHS and I&A have possession and control over some or all of the requested records.

## FACTUAL ALLEGATIONS

13. The Request seeks any and all records created from May 25, 2020 to the present relating to or reflecting: (1) Open Source Intelligence Reports concerning: (a) Mr. Wittes; (b) Mr. Baker; (c) any work of journalism, and/or any person employed as a journalist and/or engaged in newsgathering at the time the Open Source Intelligence Report was compiled; (d) any person's protected First Amendment activity; or (e) any person's participation in a public demonstration; (2) how I&A used the above-referenced Open Source Intelligence Reports, including but not limited to: (a) who the reports were distributed to and for what purpose(s); (b) any data collected in connection with the reports; (c) any files that are maintained compiling such reports with other intelligence information; or (d) any actions taken as a result of the reports; and (3) any inquiry, investigation, and/or communications relating to the propriety of the above-referenced Open Source Intelligence Reports, including but not limited to any Open Source Intelligence Reports that have been rescinded. The Request also seeks any and all records relating to or reflecting: (4) policies, procedures, and/or legal guidance in effect at any time between May 25, 2020 and the present authorizing the creation and distribution of Open Source Intelligence Reports concerning: (a) any person employed as a journalist and/or engaged

in newsgathering; (b) any work of journalism; (c) any person's protected First Amendment activity; or (d) any person's participation in a public demonstration.

14. For the purposes of the Request, "protected First Amendment activity" refers to any speech—including but not limited to public demonstration, protest, writing, reporting, newsgathering, or other similar activity—that is *not* "directed to inciting or producing imminent lawless action" and *not* "likely to incite or produce such action." *See* Ex. A at 2 (quoting *Brandenburg*, 395 U.S. at 447). "Participation in a public demonstration" refers to any involvement or association with a public demonstration, including but not limited to a protest, act of civil disobedience, scene of civil unrest, riot, or other similar event, regardless of whether or not that involvement or association constitutes "protected First Amendment activity" as previously defined.

15. Mr. Wittes requested expedited processing of the Request and certified there was a "compelling need" for the documents because they contain information Mr. Wittes "urgent[ly]" needs—as editor-in-chief of a widely-read national security blog that is "primarily engaged in disseminating information"—in order to "inform the public concerning actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

16. Mr. Wittes also requested a waiver of document search, review, and duplication fees. As editor-in-chief of *Lawfare*, Mr. Wittes is a "representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). Moreover, Mr. Wittes is not seeking the records for commercial use. Rather, Mr. Wittes plans to analyze, publish, and disseminate the information gathered through this Request to the public at no cost. 5 U.S.C. § 552(a)(4)(A)(iii).

17. On November 17, 2020, Mr. Wittes, by and through his attorneys, emailed the Request to the I&A email address provided on the DHS FOIA website: I&AFOIA@hq.dhs.gov.

18. On November 18, 2020, Mr. Wittes, by and through his attorneys, sent an identical version of the Request via UPS to the mailing address provided on the DHS FOIA website: Privacy Office, Mail Stop 0655, Department of Homeland Security, 2707 Martin Luther King Jr. AVE SE, Washington, DC 20528-065.

19. On or around December 1, 2020, December 16, 2020, and December 18, 2020, Mr. Wittes, by and through his attorneys, contacted I&A via email and voicemail regarding the Request. No one at DHS ever replied to the aforementioned emails or voicemails, or the Request itself.

20. More than ten days have elapsed since Mr. Wittes made a request for expedited processing, but DHS has failed to notify Mr. Wittes of whether his request for expedited processing has been granted or denied, as required by FOIA. 5 U.S.C. § 552(a)(6)(E)(ii).

21. More than twenty working days have elapsed since I&A's receipt of the Request, but DHS has failed to notify Mr. Wittes of any determination regarding the Request itself, as required by FOIA. 5 U.S.C. § 552(a)(6)(A)(i).

22. No records responsive to the Request have been released by DHS.

23. No substantive response regarding the production of records or information responsive to the Request has been made by DHS.

24. Neither Mr. Wittes nor his attorneys have received any determination, response, or acknowledgement, either regarding the Request itself or the request for expedited processing of the Request.

**FIRST CAUSE OF ACTION**
**FAILURE TO GRANT EXPEDITED PROCESSING**

25. Mr. Wittes repeats and incorporates herein by reference the allegations of Paragraphs 1 through 24.

26. DHS's failure to respond to Mr. Wittes's request for expedited processing violates FOIA, 5 U.S.C. § 552(a)(6)(E) and DHS's corresponding regulations, 6 C.F.R. § 5.5(e)(4).

27. Injunctive relief is appropriate to remedy DHS's failure to grant expedited processing of the Request.

## SECOND CAUSE OF ACTION
## FAILURE TO PRODUCE RECORDS

28. Mr. Wittes repeats and incorporates herein by reference the allegations of Paragraphs 1 through 27.

29. DHS's failure to process the Request, and to make responsive records available "as soon as practicable," violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and DHS's corresponding regulations, 6 C.F.R. §§ 5.5(c), 5.6(c).

30. Injunctive relief is appropriate to remedy DHS's failure to process the Request in a timely manner, as required by FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Benjamin Wittes respectfully requests that judgment be entered against Defendant United States Department of Homeland Security, and that this Court:

A. Order DHS to grant expedited processing of the Request;

B. Order DHS immediately to release to Mr. Wittes the records sought in the Request;

C. Order DHS to grant Mr. Wittes's request for a fee waiver;

D. Retain jurisdiction of this action to ensure no agency records are wrongfully withheld, and order DHS to disclose any wrongfully withheld records;

E. Award Mr. Wittes reasonable costs and reasonable attorneys' fees incurred in this action; and

F.  Grant such other and further relief as the Court may deem just and proper.

Dated:  March 11, 2021

Respectfully submitted,

/s/ Kali N. Bracey

Kali N. Bracey (458965)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 639-6000
kbracey@jenner.com

Susan J. Kohlmann (*pro hac vice* forthcoming)
Jacob L. Tracer (*pro hac vice* forthcoming)
Kara V. Brandeisky (*pro hac vice* forthcoming)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
skohlmann@jenner.com
jtracer@jenner.com
kbrandeisky@jenner.com

*Attorneys for Plaintiff*